## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

MELISSA FIELDS, et al.,

Plaintiffs,

v.                                             CIVIL ACTION NO.   2:21-cv-00090

DEPUTY SHERIFF MICHAEL KING, et al.,

Defendants.


### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Deputy Sheriff Michael King's, Sheriff L. Todd Cole's, and the Roane County Commission's Partial Motion to Dismiss.   (ECF No. 13.)   For the reasons set forth below, Defendants' Motion is **GRANTED** in part and **DENIED** in part.

### I.   BACKGROUND

This civil action arises from the shooting death of Michael Nichols ("Decedent") during an encounter with law enforcement on October 22, 2020.   (ECF No. 1 at 4, ¶¶ 20–24.)   Plaintiff, Melissa Fields—as the personal representative of the Estate of the Decedent—filed this action against Deputy Michael King ("Deputy King"), Roane County Sheriff L. Todd Cole ("Sheriff Cole"), and the Roane County Commission (the "Commission") (collectively "Defendants") on February 4, 2021.   (ECF No. 1.)

The following factual allegations are taken from Plaintiff's Complaint.   On October 22, 2020, the Decedent was alone at his home in rural Roane County, West Virginia, where he resided by himself.   (*Id.* at 3, ¶ 9.)   The Decedent's closest neighbors, Jimmy and Selena Parsons, lived

approximately 200 yards away from his home.   (*Id.* at 3, ¶ 10.)   Mrs. Parsons called Deputy King on his cell phone while he was off duty about the Decedent during the day of October 22, 2020. (*Id.* at 3, ¶ 11.)   The Parsons did not call 911 or the Sheriff's office to report any issues regarding the Decedent or otherwise, and instead spoke only privately with Deputy King on his cell phone. (*Id.* at 3, ¶ 12.)

Although Deputy King subsequently called the 911 center, Plaintiff alleges he did not provide the center with sufficient information about Mrs. Parsons' communication.   (*Id.* at 3, ¶ 13.)   The 911 center was not given detail regarding the nature of Mrs. Parsons' call regarding the Decedent, Deputy King's plans to respond to the situation, or any other information sufficient to inform the 911 center's workers as to the situation.   (*Id.*)   Instead, Deputy King only asked if certain other officers were on duty, and—when told that those officers were not available— responded to the Decedent's residence alone by himself.   (*Id.* at 3, ¶ 14.)   Deputy King then proceeded to the Decedent's residence without formally marking-up on-duty and without obtaining a warrant.[1]   (*Id.* at 4, ¶ 16.)   Upon information and belief, Deputy King was not dressed in his uniform and was not wearing a body camera.   (*Id.* at 6, ¶¶ 33–34.)

As Deputy King arrived, the Decedent—a slight, older man who was unarmed and did not own any firearms—was standing on his well-lit front porch.   (*Id.* at 4, ¶ 19.)   Plaintiff alleges that a large streetlight directly overhead would have made it easy for Deputy King to see that the Decedent presented no imposing threat, and certainly would not have been a threat to an armed

---

[1] According to Plaintiff, at least one 911 operator has said that this type of "rogue response" is routine for Deputy King.   (ECF No. 1 at 3, ¶ 15.)   Plaintiff alleges that Deputy King routinely takes calls directly from citizens and refuses to provide information to the 911 center regarding the calls.   (*Id.*)   Plaintiff contends that this practice does not follow proper protocol, bypasses the essential emergency coordination function of 911 personnel, and places victims, emergency responders, and community members at a greater risk in urgent situations.   (*Id.*)

deputy of Deputy King's physical stature.  (*Id.*)  The Complaint does not allege what events transpired between the moment Deputy King arrived at the Decedent's residence and the moment the Decedent was killed.   Nevertheless, Deputy King shot the decedent three times—once in the chest, once at a downward angle through his side into his pelvis, and once by placing his gun barrel against the Decedent's cheek and shooting him through the face downward into his chest cavity. (*Id.* at 4, ¶ 20.)   Plaintiff contends this shooting occurred with "zero justification."   (*Id.*) Because Deputy King failed to provide sufficient detail regarding his whereabouts or the circumstances surrounding Mrs. Parsons' call, the 911 center could not timely send medical attention to the scene.  (*Id.* at 4, ¶ 22.)

Sheriff Cole and Deputy King have allegedly offered as justification for the shooting Deputy King's observation at the scene that the Decedent "moved toward a weapon" during the altercation.   However, Plaintiff suggests there has been no explanation as to what was meant by that justification—such as what type of weapon was observed, where the weapon was located, and whether Deputy King had any reason to be concerned for his own safety.  (*Id.* at 5, ¶ 24.)   Plaintiff contends that Defendants have falsely suggested that the Decedent "moved toward a weapon" and may rely upon after-acquired evidence as improper justification for the shooting.   (*Id.* at 5, ¶ 26.) Specifically, Plaintiff refers to "an old BB gun," which was purportedly wedged under the Decedent's porch railing—and affixed thereto as a railing spindle—as decoration.   (*Id.* at 5, ¶ 27.) The BB gun had allegedly been positioned in this manner for quite some time, but was removed by Deputy King or other officers after the Decedent was killed.   (*Id.*)

Plaintiff alleges that this incident was not Deputy King's first encounter with the Decedent's residence, as Deputy King had apparently made previous threats of violence toward

3

the Decedent at his residence.   (*Id.* at 6, ¶ 29.)   Plaintiff alleges that, due to his previous experience at the Decedent's residence, Deputy King would have known that the BB gun was a non-threatening piece of decoration.   (*Id.*)   Moreover, Plaintiff contends that the Decedent never would have moved toward a BB gun to defend himself against Deputy King, in light of Deputy King's "well-known history of using excessive force throughout Roane County, . . . as well as [his] prior direct threats to" the Decedent.   (*Id.* at 6, ¶ 30.)

Plaintiff alleges that Deputy King has routinely shown an utter disregard for proper police procedures during his 15-year employment as a deputy in Roane County and has, on multiple occasions, used excessive and unnecessary force.   (*Id.* at 7, ¶ 37.)   According to the Complaint, Deputy King "rarely wears a uniform, and instead patrols Roane County in jeans and a t-shirt or other casual clothes," and "with the direct knowledge of [Sheriff] Cole and [the Commission], habitually escalates routine, minor situations into physical altercations, threatens use of deadly force, and on at least two prior occasions . . . , unjustifiably and improperly used deadly force." (*Id.* at 6–7, ¶¶ 34–35.)

During Deputy King's 15-year tenure as a Sheriff's deputy, Sheriff Cole held the office of Sheriff of Roane County from 2001 to 2009 and again starting in 2014 through the present.   (*Id.* at 7–8, ¶ 38.)   During Sheriff Cole's time in office, he has allegedly received a host of complaints about Deputy King's dangerous behavior, recurrent failure to follow protocols, and frequent use of excessive force.   (*Id.*)   Likewise, the Commission, as employer of both Sheriff Cole and Deputy King, received many of these complaints and allegedly had actual knowledge of Deputy King's misconduct and Sheriff Cole's failure to address it.   (*Id.* at 8, ¶ 39.)

Plaintiff offers several incidents involving Deputy King wherein he allegedly used excessive and unnecessary force, including two federal lawsuits relating to his use of excessive force, each of which Sheriff Cole allegedly failed to adequately investigate and address.  (*Id.* at 8–14, ¶¶ 40–69.)   Those incidents include the following: (1) a complaint made by a man in the fall of 2018 advising Sheriff Cole that Deputy King had unnecessarily pulled his weapon while apprehending the man's son, (*Id.* at 8–9, ¶¶ 42–43); (2) a complaint relating to an incident occurring on April 10, 2013, when Deputy King pulled over a school bus and detained a minor child, without charge, because the minor's hat had flown out of the school bus window, (*Id.* at 9–10, ¶¶ 45–52); (3) a formal complaint against Deputy King made by a woman who called 911 to report that Deputy King was—for no lawful purpose—commanding her to leave the premises of Walton Middle School where her child was attending a dance, while he had his hand on his gun, (*Id.* at 10–11, ¶¶ 53–58); (4) an incident where a Roane County citizen was severely beaten in his yard and charged with a crime after making a complaint to the Commission to share his views that Deputy King should not be re-hired by the Commission, (*Id.* at 12, ¶¶ 60–62); (5) a federal lawsuit alleging that Deputy King forcibly entered a man's home to beat, stomp, kick and punch the man while he lay prone on the ground, (*Id.* at 12–13, ¶ 64), *see also Brad E. Proctor v. Roane Cty. Comm'n, et al.*, Civil Action No. 2:19-cv-00432 (S.D. W. Va.); and (6) a second federal lawsuit alleging that Deputy King responded to a harmless 911 call about a man spinning his truck tires on his own property and shot the man in the face with a 12-gauge shotgun while the man was lying on his back on his own property, (*Id.* at 13, ¶ 65), *see also Travis Rhodes, as Personal Representative of the Estate of Timothy E. Rhodes v. Deputy Sheriff Michael King, and the Roane Cty. Comm'n*, Civil Action No. 2:19-cv-00626 (S.D. W. Va.).

Plaintiff initiated the instant action on February 4, 2021.  (ECF No. 1.)  Defendants filed their Partial Motion to Dismiss Plaintiff's Complaint on April 26, 2021.  (ECF No. 13.)  Plaintiff filed her Response to Defendants' Partial Motion to Dismiss on May 10, 2021.  (ECF No. 15.)  Defendants timely filed their Reply in Support of Partial Motion to Dismiss on May 17, 2021.  (ECF No. 19.)  Accordingly, Defendants' motion has been fully briefed and is ripe for adjudication.

## II.    LEGAL STANDARD

A pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face."  *Wikimedia Found. v. Nat'l Sec. Agency,* 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'"  *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555).  Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare

legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[ ] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.* "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted).

## III.    DISCUSSION

Defendants have moved for the dismissal of Counts I and II in their entirety, and Count III to the extent it is asserted against the Commission and Sheriff Cole. (ECF No. 14.) Moreover, Defendants argue that punitive damages against the Commission are prohibited. (*Id.* at 19.) Plaintiff, however, has appeared to combine several causes of action within each count of the Complaint.[2] Therefore, the Court will conduct its analysis in the same order presented by the Defendants in their accompanying Memorandum of Law. (*Id.*)

---

[2] Plaintiff's "shotgun approach" with respect to the causes of action alleged in Count I of the Complaint violate Federal Rules of Civil Procedure 8(d)(1) and 10. Rule 8(d)(1) requires that each allegation in a pleading "be simple, concise, and direct." *Fed. R. Civ. P. 8(d)(1)*. Rule 10 requires that each claim founded on a separate transaction or occurrence be stated in a separate count, "if doing so would promote clarity." *Fed. R. Civ. P. 10(b)*. Count I is not "simple," it is not "concise," and it is not "direct." Rather, it alleges several different causes of action, each based on varying theories of liability. Alleging each of these causes of action in individual counts would undoubtedly promote clarity, and the causes of action alleged in Count I are founded on separate occurrences—the Commission's liability is

A. *Count I: State-Law Claims for Negligence and Vicarious Liability Against the Roane County Commission*

Count I alleges "state law claims of negligence and vicarious liability against [the Commission]." (ECF No. 1 at 16.) Under Count I, Plaintiff alleges that the Commission "is strictly and vicariously liable" for the acts of Deputy King and Sheriff Cole "pursuant to W. Va. Code § 29-12A-1 *et seq*." (*Id.* at 16, ¶¶ 75, 76.) Count I further alleges that the Commission "is liable for its own negligent retention and supervision of [Deputy] King." (*Id.* at 19, ¶ 84.) The Court will address each claim in turn.

1. <u>Liability of the Commission under W. Va. Code § 29-12A-1 *et seq*.</u>

Plaintiff alleges the Commission is liable pursuant to W. Va. Code § 29-12A-1 *et seq.*, the West Virginia Governmental Tort Claims and Insurance Reform Act (the "Tort Claims Act"), in two respects. (*Id.* at 16, ¶¶ 75, 76.) First, Plaintiff contends the Commission is liable for Deputy King's negligent acts and omissions during his response to the Decedent's residence. (*Id.* at 14–15, ¶¶ 70(a)–(n).) Second, Plaintiff alleges the Commission is liable for Sheriff Cole's negligent training, supervision, and retention of Deputy King, as well as his failure to follow policies and procedures adopted by the Commission and his implementation of policies that allegedly served to condone, encourage, and demonstrate indifference to the use of excessive force. (*Id.* at 17–18, ¶¶ 79(a)–(g).)

Under the Tort Claims Act, a political subdivision may be held "liable for injury, death, or loss to persons . . . caused by the negligent performance of acts by their employees while acting

---

premised on: (1) Deputy King's conduct in responding to the Decedent's residence; (2) Sheriff Cole's overall failure to adequately train and supervise Deputy King, as well as Sheriff Cole's negligent retention of Deputy King; and (3) the Commission's own failure to supervise and train Deputy King, as well as its own negligent retention of Deputy King. Future pleadings and individual counts in such condition may very well be stricken by this Court.

within the scope of employment.  W. Va. Code § 29-12A-4(c)(2).  However, such liability is explicitly subject to the immunities and limitations codified in W. Va. Code § 29-12A-5 and W. Va. Code § 29-12A-6.  Moreover, by the express terms of the Tort Claims Act, political subdivisions cannot be held liable for their employees' intentional malfeasance.  *See* W. Va. Code § 29-12A-4(b)(1); *Mallamo v. Town of Rivesville*, 477 S.E.2d 525, 533–34 (W. Va. 1996).

As outlined below, Plaintiff's claim against the Commission that is premised on Deputy King's conduct during his response to the Decedent's residence—whether intentional or negligent—cannot withstand Defendants' Motion to Dismiss because the Commission is entitled to statutory immunity under the Tort Claims Act.  Likewise, Plaintiff's claim against the Commission that is premised on Sheriff Cole's negligence with respect to policy-making decisions also cannot withstand Defendants' Motion to Dismiss because the Commission is entitled to statutory immunity under the Tort Claims Act.  However, Plaintiff's claims against the Commission that are premised on Sheriff Cole's negligent training, supervision, and retention of Deputy King survive Defendants Motion to Dismiss because the Tort Claims Act does not confer immunity to political subdivisions in this respect.

*i.    Liability of the Commission Premised on Deputy King's Intentional Acts*

Defendants first argue that "the Complaint fails to set forth a plausible claim for negligence against the [Commission] because [Plaintiff's] allegations are of intentional acts," not negligent acts.  (ECF No. 14 at 7.)  Plaintiff, however, contends that she "has pleaded numerous acts and omissions—by [Deputy] King, by [Sheriff] Cole, and by [the Commission]—which a jury may determine were negligent and a proximate cause of the shooting death of [the Decedent]."  (ECF No. 15 at 8.)

By the express terms of the Tort Claims Act, political subdivisions cannot be held liable for their employees' intentional malfeasance.  *See Mallamo*, 477 S.E.2d at 533–34 ("In that conspiracy is an intentional act, not a negligent one, the Town of Rivesville would not be liable for any intentional malfeasance on the part of Wilson.").  "[C]laims of intentional and malicious acts are included in the general grant of immunity in W. Va. Code § 29-12A-4(b)(1)."  *Zirkle v. Elkins Road Pub. Serv. Dist.*, 655 S.E.2d 155, 160 (W. Va. 2007).

This Court considered this very issue in *Rhodes v. King*, No.: 2:19-cv-00626, 2020 WL 4607323 (S.D. W. Va. Aug. 11, 2020), which was consolidated with the instant action for discovery purposes.  (*See* ECF No. 10) (order consolidating the instant action with Civil Action No. 2-19-cv-00626 for the limited purpose of conducting discovery).  In *Rhodes*, this Court considered whether acts alleged by the plaintiff as "negligent and reckless" were instead intentional conduct on the part of Deputy King, precluding liability against the Commission under the Tort Claims Act.  *Rhodes*, 2020 WL 4607323, at *4.  After noting that claims of intentional acts were excluded in the general grant of immunity in W. Va. Code § 29-12A-4(b)(1), *see id.* at 3 (quoting *Zirkle*, 655 S.E.2d at 160), this Court held that the plaintiff had not alleged sufficient factual information to support a claim of negligence.  *Id.*  Rather, the plaintiff had essentially asserted a claim of excessive force under the Fourth Amendment, under which Deputy King's conduct was, logically, intentional.  *Id.* (citing *Brower v. Cty. of Inyo*, 489 U.S. 593, 596 (1989)).

Here, Defendants assert that Plaintiff failed to address their argument that the Tort Claims Act precludes the Commission's liability for Deputy King's intentional acts when he responded to the Decedent's residence.  (ECF No. 19 at 1.)  Moreover, like the allegations brought by the plaintiff in *Rhodes*, here, some—but certainly not all—of Plaintiff's allegations essentially assert

10

a claim of excessive force under the Fourth Amendment, under which Deputy King's conduct was, logically, intentional.   *See, e.g.*, *Brower*, 489 U.S. at 596 ("Violation of the Fourth Amendment requires an intentional acquisition of physical control.   A seizure occurs even when an unintended person or thing is the object of the detention or taking, . . . but the detention or taking itself must be willful.")   Insofar as Plaintiff's brief is unresponsive to this argument, and because the Commission's liability under the Tort Claims Act cannot rest on Deputy King's intentional conduct, Defendants' Motion to Dismiss is **GRANTED** to the extent that Count I alleges liability on the part of the Commission pursuant to the Tort Claims Act for Deputy King's intentional conduct.

### ii.   *Liability of the Commission Premised on Deputy King's Negligent Acts*

Plaintiff argues that she "has pleaded numerous acts and omissions . . . which a jury may determine were negligent and a proximate cause of the shooting death of [the Decedent]."   (ECF No. 15 at 8.)   However, this argument also fails because the Commission is immune from liability resulting from Deputy King's conduct during his response to the Decedent's residence.   W. Va. Code § 29-12A-5(a)(5) grants political subdivisions immunity from liability under the Tort Claims Act if a plaintiff's loss or claim results from "the failure to provide, or the method of providing, police, law enforcement or fire protection."   Plaintiff argues this grant of immunity is "very specific" and is inapplicable to the present case.   (ECF No. 15 at 9.)   The Court disagrees.

The West Virginia Supreme Court of Appeals ("Supreme Court of Appeals") considered the scope of the immunity granted by subsection 5(a)(5) to political subdivisions in *Albert v. City of Wheeling*, 792 S.E.2d 628 (W. Va. 2016).   That case involved the Wheeling Fire Department's failure to contain a fire at the plaintiff's home due to rocks clogging the water lines connected to

the fire hoses. *Albert*, 792 S.E.2d at 630. The plaintiff sued, alleging that the City of Wheeling failed to inspect, maintain, and operate its waterworks and fire hydrant system and was liable under the Tort Claims Act. *Id.* The City moved to dismiss the plaintiff's complaint, arguing that it was immune from liability under W. Va. Code § 29-12A-5(a)(5) because the plaintiff's claim arose from fire protection services. *Id.*

After noting that the plaintiff "wholly overlooked" subsection 4(c)'s disclaimer that the subsequent grants of liability were expressly made "subject to" the immunities granted to political subdivisions under section five, the Supreme Court of Appeals found that liability under section 4 could not be dissociated from the introductory language that expressly conditioned liability on the absence of any provisions of immunity set forth in section five. *Id.* at 631. Therefore, the Supreme Court of Appeals held that section five "operate[d] to prevent the imposition of liability . . . for the negligent performance of [the City's] employee's actions performed within the scope of . . . employment and authority when those actions pertain[ed] to either the failure to provide fire protection or the method of providing fire protection." *Id.*

Plaintiff cites Syllabus Points Three and Four of *Smith v. Burdette*, 566 S.E.2d 614 (W. Va. 2002), which she contends limits subsection 5(a)(5) to "the formulation and implementation of policy" and "the decision-making or the planning process in developing a governmental policy." (ECF No. 15 at 11.) This argument is meritless. *Albert* explicitly overruled *Smith* in its entirety because it could not be reconciled with the Supreme Court of Appeals' precedent on the issue of statutory immunity under the Tort Claims Act. *Albert*, 792 S.E.2d at 632. Moreover, this Court's precedent confirms this reading of *Albert*. *See Means v. Peterson*, No.: 2:20-cv-00561, 2020 WL 6702036, at *3–4 (S.D. W. Va. Nov. 13, 2020) ("[T]he language of *Albert* is explicit.

A [political subdivision] is not liable for damages that result from the negligence of a municipal employee when that negligence occurs in furtherance of providing police, law enforcement, or fire protection."); *Dixon v. City of St. Albans*, No.: 2:20-cv-00379, 2020 WL 6702037, at *2 (S.D. W. Va. Nov. 13, 2020) ("[I]n deciding *Albert*, the Supreme Court of Appeals effectively overruled *Smith*. . . . Therefore, the immunity for employee negligence is not limited to policy questions . . . but extends to all police and fire protection related employee negligence."); *Daniels v. Wayne Cty.*, No.: 3:19-cv-00413, 2020 WL 2543298, at *4 (S.D. W. Va. May 19. 2020) ("Courts within this District have considered the implications of [*Albert*'s] holding and have reasoned, in effect, that *Albert* immunizes political subdivisions from the negligent actions of their employees in providing police protection."); *Taylor v. Clay Cty. Sheriff's Dep't*, No.: 2:19-cv-00387, 2020 WL 890247 at *6 (S.D. W. Va. Feb. 24, 2020) ("In effect, the *Albert* court overruled the limitation of the police protection immunity announced in *Smith*.")

Here, with respect to Deputy King, Plaintiff contends that the Complaint sufficiently alleged "a laundry list of at least 13 specific acts and omissions" of Deputy King, "any one of which may be found to be a proximate cause of the shooting death at issue."[3]   (*Id.* at 8–9.)

---

[3] The Complaint alleges that the following acts and omissions of Deputy King amount to negligence:

   (1) Deputy King's receipt of the call from the Decedent's neighbor directly to his cell phone and failure to relay the information to 911 or the Sheriff's Department;

   (2) Deputy King's failure to mark-up on duty;

   (3) Deputy King's failure to obtain a warrant prior to responding to the scene;

   (4) Deputy King's failure to fully obtain and/or verify relevant information prior to approaching the Decedent's residence;

   (5) Deputy King's failure to fully inform 911 and the Sheriff's Department of sufficient details regarding the situation at hand such that relevant individuals and emergency medical providers could respond in an appropriate and timely manner;

However, the conduct Plaintiff relies on to establish Deputy King's negligence and, ultimately, the Commission's liability under the Tort Claims Act, relates to the method of providing police or law enforcement protection and is plainly covered by the immunity conferred under subsection 5(a)(5). Although Plaintiff may have raised sufficient factual allegations that Deputy King's conduct during his response to the Decedent's residence was negligent,[4] the plausibility of Plaintiff's allegations is immaterial because that conduct was in furtherance of providing police or law enforcement protection, which entitles the Commission to statutory immunity.

Plaintiff's claim against the Commission cannot withstand Defendants' Motion to Dismiss because Deputy King's conduct—when he responded to the Decedent's residence—was in furtherance of providing police or law enforcement protection, and the Commission is entitled to immunity from liability stemming from his conduct under W. Va. Code § 29-12A-5(a)(5).

---

(6) Deputy King's arrival at the scene out of uniform in plain clothes, and without his body camera;

(7) Deputy King's unnecessary escalation of a non-violent situation;

(8) Deputy King's escalation of the likelihood of a misunderstanding, as well as the likelihood of a lethal shooting through accident, misunderstanding, or impulse;

(9) Deputy King's failure to use non-lethal procedures, to the extent the same were even warranted;

(10) Deputy King's failure to follow proper police procedures by prematurely resorting to lethal force without first exhausting (or even trying to use) non-lethal procedures or options;

(11) Deputy King's unnecessary shooting of the Decedent multiple times, either because of his negligence in committing the acts and omissions described herein and escalating the situation improperly, or because of his intentional use of unlawful, excessive and lethal force;

(12) Deputy King's failure to properly render aid; and

(13) Deputy King's failure to sufficiently notify first responders of his whereabouts and the shooting such that an ambulance and medical team could timely render aid to the Decedent.

(ECF No. 1 at 14 ¶¶ 70(a)–(m).)

[4]  The Court need not make a finding on this point insofar as it finds the Commission is entitled to statutory immunity.

14

Whether Plaintiff has alleged sufficient factual allegations to support her claim against the Commission for Deputy King's negligent conduct is immaterial to the instant action, and the Court declines to address that question because, as explained above, the Commission is entitled to statutory immunity.    Therefore, Defendants' Motion to Dismiss is **GRANTED** to the extent that Count I alleges liability on the part of the Commission pursuant to the Tort Claims Act for Deputy King's negligent conduct.

> iii.    *Liability of the Commission Premised on Sheriff Cole's Policy-Making Decisions*

Defendants next argue that the Commission is immune from liability premised on its alleged failure to follow adopted policies and procedures with regard to investigations of citizens' complaints, as well as its implementation of customs, policies, and procedures that allegedly condoned, encouraged, and demonstrated deliberate indifference to the use of excessive force. (ECF No. 14 at 9.)   Plaintiff's Complaint alleges that the Commission is liable for Sheriff Cole's failure "to follow adopted and implemented policies and procedures . . . with regard to investigation of multiple citizen complaints and federal lawsuits about [Deputy] King's" conduct, and for its implementation of "customs, policies, and procedures, whether written or unwritten, condoning, encouraging, and demonstrating indifference to the use of excessive force. . . ."   (ECF No. 1 at 18, ¶¶ 79(e) & (f).)   For the reasons explained below, these policy-related decisions by Sheriff Cole are plainly covered by the immunity granted to the Commission under the Tort Claims Act.

The Tort Claims Act confers immunity to political subdivisions from liability if a loss or claim results from "[a]doption or failure to adopt a law, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy."   W. Va. Code § 29-

12A-5(a)(4).   Plaintiff's allegations in this respect are predicated on the Sheriff Cole's conduct as it relates to official, or unofficial, Commission policy with respect to use of force investigations. The allegations are further predicated on Sheriff Cole's and the Commission's policy-making decisions with respect to their implementation of "customs, policies, and procedures, whether written or unwritten, condoning, encouraging, and demonstrating indifference to the use of excessive force. . . ."   (ECF No. 1 at 18, ¶ 79(f).)   These policy-related decisions squarely fall within the immunity conferred to political subdivisions by subsection 5(a)(4).

Therefore, Count I, with respect to Plaintiff's claims against the Commission outlined in Paragraphs 79(e) and 79(f), cannot withstand Defendants' Motion to Dismiss because the Commission is immune from liability under the Tort Claims Act.   Accordingly, Defendants' Motion to Dismiss is **GRANTED** to the extent that Count I alleges liability on the part of the Commission pursuant to the Tort Claims Act for Sheriff Cole's and the Commission's policy-making decisions outlined in Paragraphs 79(e) and 79(f).

> iv.   *Liability of the Commission Premised on Sheriff Cole's Negligent Training, Negligent Supervision, and Negligent Retention of Deputy King*

Defendants next contend the Commission is immune from liability premised on Sheriff Cole's conduct.   (ECF No. 14 at 8–9.)   However, to the extent Defendants argue the Commission is immune from liability for Sheriff Cole's negligent training, supervision, and retention of Deputy King, such argument is misplaced.   Although the Tort Claims Act confers immunity to political subdivisions from liability stemming from a number of circumstances, political subdivisions are not immune from liability stemming from an employee-superior's negligent training, supervision, or retention of a subordinate.   *See C.C. v. Harrison Cty. Bd. of Educ.*, 859 S.E.2d 762, 770–71 (W. Va. 2021) (finding that a county board of education was not entitled to immunity under the

Tort Claims Act when the plaintiff's allegations sounded in negligence and complemented the allegations that the board negligently retained an assistant principal once it became aware of his conduct).   Therefore, the Tort Claims Act does not grant immunity to the Commission from liability stemming from Sheriff Cole's negligent training, supervision, and retention of Deputy King, and whether such a claim survives Defendants' Motion to Dismiss is dependent on whether Plaintiff has adequately plead a plausible claim for relief.

   2.   <u>Liability of the Commission for Negligent Hiring, Training, Supervision, and Retention of Deputy King</u>

   Defendants next argue that Plaintiff's claims for negligent hiring, negligent training, negligent supervision, and negligent retention should be dismissed because she has not alleged sufficient factual allegations to support such claims.   (ECF No. 14 at 9.)   The Court will address Plaintiff's negligent hiring and negligent retention claims before addressing Plaintiff's negligent training and negligent supervision claims.

   *i.   Negligent Hiring and Negligent Retention*

   Plaintiff maintains that her negligent hiring claim survives Defendants' Motion to Dismiss because Sheriff Cole and the Commission received a complaint from a Roane County citizen prior to Deputy King's re-hire in 2016, and when Deputy King learned of this complaint, he "beat the man in his yard while the man's wife and child begged him to stop."   (ECF No. 15 at 14.)   Plaintiff alleges that "[d]espite these circumstances," as well as other alarming incidents involving Deputy King's alleged use of excessive force, "the [Commission] and [Sheriff] Cole proceeded to hire [Deputy] King in 2016."   (*Id.*)   She further avers that her negligent retention claim survives because "[b]oth [Sheriff] Cole and the [Commission] had actual knowledge of [Deputy] King's

17

pattern of intimidation and use of excessive force . . . , both through citizen complaints, multiple lawsuits, and even a letter from [Plaintiff's counsel]."   (ECF No. 15 at 12–13.)

West Virginia recognizes a cause of action for negligent hiring and retention.   *See State ex rel. W. Va. State Police v. Taylor*, 499 S.E.2d 283, 289 n.7 (W. Va. 1997).   The Supreme Court of Appeals applies the following test for a claim based on negligent hiring under West Virginia law:

> [W]hen the employee was hired or retained, did the employer conduct a reasonable investigation into the employee's background vis a vis the job for which the employee was hired and the possible risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit employee?   Should the employer have reasonably foreseen the risk caused by hiring or retaining an unfit person?

*McCormick v. W. Va. Dep't of Pub. Safety*, 503 S.E. 2d 502, 506 (W. Va. 1998) (quoting *Taylor*, 499 S.E.2d at 289 n.7).   Courts must consider "the nature of the employee's job assignment, duties and responsibilities."   *Id.* at 507.   The duty with respect to hiring increases "as the risks to third persons associated with a particular job increase."   *Id.*   An employer's duty is "heightened" when the prospective employee is a police officer, as police officers are permitted to carry guns, to use necessary force to effect arrest, and to enter civilian residences under certain circumstances. *Woods v. Town of Danville*, 712 F. Supp. 2d 502, 514 (S.D. W. Va. 2010).

Here, Plaintiff has adequately plead claims for negligent hiring and negligent retention against the Commission.   With respect to Plaintiff's negligent hiring claim, after Deputy King's initial hire there was apparently a gap in service, and then he was hired by the Commission a second time in 2016.   (ECF No. 15 at 14.)   It is this second hiring of Deputy King upon which Plaintiff bases her negligent hiring claim.   With respect to her negligent retention claim, Plaintiff contends that the Commission's retention of Deputy King as a deputy sheriff, despite numerous

18

warnings and prior incidents of unlawful use of excessive force—of which, she avers, the Commission had actual knowledge of, gives rise to a claim of negligent retention against the Commission.   (ECF No. 15 at 12–13.)

Plaintiff has alleged several incidents involving Deputy King, one of which occurred while the Commission was contemplating Deputy King's re-hire, that would have put the Commission on notice that harm to third parties could result from Deputy King's conduct.   First, Plaintiff alleges that in April of 2013 Deputy King pulled over a school bus and forcibly detained a minor child from the school bus because the minor's hat had flown out of the school bus window.   (ECF No. 1 at 9, ¶¶ 45–47.)   Plaintiff contends that Sheriff Cole's and the Commission's investigation of this incident was "shoddy and insufficient."   (*Id.* at 9, ¶ 50.)   Second, Plaintiff alleges an incident in 2014 involving a woman who called 911 to report that Deputy King was—for no lawful purpose—commanding her to leave the premises of Walton Middle School, where her child was attending a dance, with his hand on his gun.   (*Id.* at 10, ¶¶ 53–58.)   Plaintiff, again, alleges that Sheriff Cole and the Commission failed to adequately investigate this incident.   (*Id.* at 11, ¶ 58.) Third, Plaintiff alleges that Deputy King and two other officers "severely beat [a] man in his yard while the man's wife and child begged them to stop," all because the man submitted a complaint to the Commission to share his views that Deputy King should not be re-hired by the Sheriff's Department in 2016.   (*Id.* at 12 ¶¶ 60–62.)   Finally, Plaintiff alleges two other incidents involving Deputy King's use of deadly force that have resulted in federal lawsuits being filed against him. (ECF No. 1 at 12 – 13, ¶¶ 63–67.)

Plaintiff's allegations, taken as a whole, satisfy the pleading requirements for her claims of negligent hiring and negligent retention.   First, these allegations, taken as true, should have served

19

to put the Commission on notice of Deputy King's alleged propensity for using excessive force or not following appropriate protocol.   Next, these allegations indicate that neither Sheriff Cole nor the Commission took appropriate action to quell or correct such behavior.   And finally, Plaintiff has alleged that Deputy King's conduct led to injury.   Therefore, Plaintiff has adequately plead her claims of negligent hiring and negligent retention on these factual allegations.   Accordingly, Defendants' Motion to Dismiss is **DENIED** with respect to Plaintiff's negligent hiring and negligent retention claims under Count I.

    *ii.* *Negligent Supervision and Training*

   Next, Plaintiff argues that her negligent supervision and negligent training claims survive because "the [Commission] and [Sheriff] Cole were on notice of [Deputy] King's propensity for violence, yet they did not even attempt to address his behavior through re-training focused on . . . the proper use of force, standards of conduct, interactions with the public, use of weapons, or use of body cameras."  (ECF No. 15 at 15.)   To state a claim for negligent supervision or training under West Virginia law, "a plaintiff must show that an employer failed to properly supervise an employee and, as a result, the employee proximately caused injury to the plaintiff.   The [Supreme Court of Appeals] treats negligent supervision like other claims based in negligence."  *Lester*, 85 F. Supp. 3d at 865.

   For the same reasons Plaintiff has adequately alleged claims of negligent hiring and negligent retention, Plaintiff has also adequately alleged claims for negligent supervision and training.   The Complaint's factual allegations, taken as true, should have served to put the Commission on notice of Deputy King's alleged propensity for using excessive force or not following appropriate protocol.   These allegations indicate that neither Sheriff Cole nor the

Commission took appropriate action to quell or correct such behavior.   And finally, Plaintiff has alleged that Deputy King's conduct led to injury.   Therefore, Plaintiff has adequately plead her claims of negligent supervision and training on the factual allegations contained in the Complaint. Accordingly, Defendants' Motion to Dismiss is **DENIED** with respect to Plaintiff's negligent supervision and negligent training claims under Count I.

   *B.  Count II: State-Law Claims Against Sheriff Cole and Deputy King*

   Next, Defendants contend that Plaintiff's claims under Count II of the Complaint fail as a matter of law because they were "improperly plead and because the Tort Claims Act provides immunity to employees of political subdivisions who are acting within the scope of their employment."   (ECF No. 14 at 11.)   Plaintiff, however, argues that "Count II is pleaded in the alternative," and that she "has sufficiently pleaded the elements of her claim in the alternative." (ECF No. 15 at 16.)

   Employees of political subdivisions are immune from liability under the Tort Claims Act except in the following three instances:

   (1)    His or her acts or omissions were manifestly outside the scope of
          employment or official responsibilities;

   (2)    His or her acts or omissions were with malicious purpose, in bad faith, or in
          a wanton or reckless manner; or

   (3)    Liability is expressly imposed upon the employee by a provision of [the
          West Virginia Code].

W. Va. Code §29-12A-5(b).

   Defendants contend that "Plaintiff has made no attempt to allege that [] Deputy King or Sheriff Cole acted outside the scope of their employment or official responsibilities."   (ECF No. 14 at 12.)   Plaintiff does not appear to respond to this argument, instead responding that she

21

"cannot know the subjective state of mind of either [Deputy] King when he shot [the Decedent], or of [Sheriff] Cole in his failure to take any remedial action . . . in response to the evidence before him." (ECF No. 15 at 16.) As such, Plaintiff has conceded her state-law claims against Deputy King and Sheriff Cole on the basis that they acted outside the scope of their employment or official responsibilities. *See Brevard v. Racing Corp. of West Virginia*, No.: 2:19-cv-00578, 2020 WL 1860713, at *8 (S.D. W. Va. Apr. 13, 2020) (noting plaintiff abandoned claim by failing to respond to defendant's argument); *Taylor*, 2020 WL 890247, at *2 (same); *Blankenship v. Necco, LLC*, No.: 2:16-cv-12082, 2018 WL 3581092, at *9 (S.D. W. Va. July 25, 2018) ("The failure to respond to arguments raised in a motion . . . can indicate that the non-moving party concedes the point or abandons the claim.").

However, Defendants also argue that "Plaintiff has failed to allege any facts that would support her groundless assertion that [Deputy King and Sheriff Cole] acted with a malicious purpose, in bad faith, or in a wanton or reckless manner." (ECF No. 14 at 12.) Plaintiff counters, arguing that "Count II is pleaded in the alternative" and the Complaint adequately pleads "that [Deputy] King's acts and omissions, whether negligent or malicious, proximately caused severe injuries, pain and suffering, and the ultimate death of [the Decedent]." (ECF No. 15 at 16.)

Here, at this stage in the proceedings, Plaintiff has alleged sufficient factual allegations that Deputy King and Sheriff Cole plausibly acted either with a malicious purpose, in bad faith, or in a wanton or reckless manner to withstand Defendants' Motion to Dismiss. As explained above, the factual allegations regarding Deputy King's conduct during his response to the Decedent's residence could amount to a use of excessive force. As Plaintiff has pointed out, it is unclear whether Deputy King's subjective state of mind during this incident rose to the level of

22

"malicious," "in bad faith," or whether his response occurred in "a wanton or reckless manner." It is also unclear whether Sheriff Cole's subjective state of mind, as Deputy King's superior, rose to such levels of culpability when he investigated, or failed to appropriately investigate, Deputy King's conduct. Nevertheless, on the face of the Complaint, Plaintiff has alleged sufficient factual allegations, which are to be taken as true, to establish Deputy King's and Sheriff Cole's personal liability under the Tort Claims Act.

Accordingly, Defendants' Motion to Dismiss is **DENIED** with respect to Plaintiff's claim under Count II that Deputy King's and Sheriff Cole's actions or omissions were done with a malicious purpose, in bad faith, or in a wanton or reckless manner. However, Defendants' Motion to Dismiss is **GRANTED** with respect to Plaintiff's claim under Count II that Deputy King's and Sheriff Cole's actions or omissions were done outside the scope of their employment.

### C. Count III: Monell Claim Against the Roane County Commission

Count III asserts a cause of action against all Defendants for the deprivation of rights and is brought under 42 U.S.C. § 1983. (ECF No. 1 at 20–22, ¶¶ 88–99.) Specific to the Commission, Plaintiff claims that the Commission is liable "because Defendants King and Cole's conduct, not only occurred while acting under the aegis of the [Commission], but also, upon information and belief, resulted directly from the express written or unwritten customs and policies of [the Commission]." (ECF No. 1 at 21, ¶ 94.) Defendants argue for the dismissal of Count III as to the Commission because Plaintiff has failed to allege that the Decedent's constitutional rights were violated pursuant to an unconstitutional policy or custom fairly attributable to the Commission. (ECF No. 14 at 13.)

23

First, a municipality may be liable under § 1983 if the municipality itself subjects an individual to a deprivation of rights or causes an individual to be subjected to such deprivation. *Connick v. Thompson*, 563 U.S. 51, 59 (2011) (citing *Monell v. New York. City Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)).   Under §1983, municipalities are responsible only for "their own illegal acts."   *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (citing *Monell*, 436 U.S. at 665–83).

Thus, to prove a § 1983 claim against a municipality, a plaintiff must prove that the action that cause their injury was "pursuant to official municipal policy."   *Id.* at 691, 694.   A plaintiff asserting a § 1983 claim against a municipality, then, must plead "(1) the existence of an official policy or custom; (2) that the policy or custom is fairly attributable to the municipality; and (3) that the policy or custom proximately caused the deprivation of a constitutional right."   *Poe v. Town of Gilbert, West Virginia*, No.: 2:11-cv-00645, 2012 WL 3853200 at *4 (S.D. W. Va. Sep. 5, 2012) (quoting *Alexander v. City of Greensboro*, 762 F. Supp. 2d 764, 781 (M.D.N.C. 2011)).

*Poe* instructs how a policy or custom may become attributable to a municipality:

A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

*Id.* (quoting *Alexander*, 762 F. Supp. 2d at 781).   *See also Jordan ex. rel Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994).

Plaintiff argues that an official policy or custom can be shown here through Sheriff Cole's and the Commission's acquiescence of Deputy King's excessive use of force, despite multiple citizen complaints and lawsuits that put the Commission on notice of Deputy King's unlawful

24

conduct.   (ECF No. 15 at 17–18.)   For many of the same reasons the Court finds that Plaintiff has successfully pleaded her negligent training, supervision, hiring, and retention claims, Plaintiff has also successfully plead her *Monell* claim here.

First, Plaintiff has alleged several specific incidents which, taken as true, plausibly establish "a culture of use of excessive force and utter disregard for proper police procedures, as well as a disregard for the safety and welfare of [the public]."   (ECF No. 1 at 7–14, ¶¶ 37–69.) Further, Plaintiff has alleged that, although Sheriff Cole had actual knowledge of these incidents and potentially others, neither he nor the Commission took any remedial, adverse, or other action against Deputy King in response to his behavior.   (ECF No. 15 at 17.)   Finally, Plaintiff has alleged that this same inaction led directly to Deputy King fatally shooting the Decedent in this case.

At this stage in the proceedings, Plaintiff has sufficiently plead a plausible *Monell* claim against the Commission.   Therefore, Defendants' Motion to Dismiss is **DENIED** as to Count III to the extent it is asserted against the Commission.

### D.   Count III: § 1983 Claim Against Sheriff Cole

Defendants also contend that Plaintiff's § 1983 claim against Sheriff Cole fails as a matter of law "because there are no factual allegations supporting the requisite elements."   (ECF No. 14 at 18.)   In this respect, Defendants aver that Plaintiff has asserted a "supervisory liability claim" against Sheriff Cole, and the factual allegations are insufficient to establish the elements of this claim.   (*Id.*)   Plaintiff argues that the factual allegations alleged in the Complaint "certainly" establish a claim of supervisory liability against Sheriff Cole for the same reasons outlined in her

argument that her *Monell* claim and negligent hiring, training, supervision, and retention claims survive Defendants' Motion to Dismiss.

Three element are necessary to establish supervisory liability:

(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

The first element requires a showing by the plaintiff that "(1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." *Id.* To show that conduct "poses a pervasive and unreasonable risk of constitutional injury requires evidence that the conduct is "widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.*

The second element, deliberate indifference or tacit authorization, is established "by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" *Id.* In this respect, the plaintiff "assumes a 'heavy burden of proof' because the plaintiff 'cannot satisfy his burden [] by pointing to a single incident or isolated incidents.'" *Young v. Muncy*, No.: 2:19-cv-00829, 2020 WL 1521799, at *5 (S.D. W. Va. Mar. 30, 2020) (quoting *Shaw*, 13 F.3d at 799).

Finally, the third element can be established "when the plaintiff demonstrates an 'affirmative causal link' between the supervisor's inaction and the harm suffered by the plaintiff."

*Shaw*, 13 F.3d at 799 (citations omitted).   Causation under this element encompasses both cause in fact and proximate cause.   *Id.*

Here, for many of the same reasons Plaintiff has adequately plead her *Monell* claim and her negligent hiring, training, supervision, and retention claims, Plaintiff has also adequately plead her § 1983 supervisory liability claim against Sheriff Cole.   With respect to the first element, Plaintiff has plead sufficient factual allegations establishing that Sheriff Cole had actual knowledge of conduct engaged in by Deputy King that posed a pervasive and unreasonable risk of constitutional injury.   Moreover, as explained above, Plaintiff has alleged several incidents involving Deputy King which, taken as true, establishes that Deputy King's use of excessive force did not merely occur in isolated incidents, but constituted documented widespread use of excessive force that posed an unreasonable risk of harm or constitutional injury.   Based upon the allegations, which are to be taken as true, Sheriff Cole would have had actual knowledge of Deputy King's widespread use of excessive force prior to Deputy King's response to the Decedent's residence.

With respect to the second element, Plaintiff has plead sufficient factual allegations establishing that Sheriff Cole's response to Deputy King's widespread use of excessive force was so inadequate as to show deliberate indifference to or tacit authorization of Deputy King's conduct. As noted above, Plaintiff does not point to a single incident or isolated incidents.   Rather, she points to a chronology of events, some of which involve factual circumstances eerily similar to those of the instant action, that establishes Sheriff Cole's continued inaction in the face of documented widespread abuses by Deputy King.   These factual allegations, taken as true, adequately establish the second element of Plaintiff's supervisory liability claim against Sheriff Cole.

27

Finally, with respect to the third element, Plaintiff has plead sufficient factual allegations establishing an affirmative causal link between Sheriff Cole's inaction and the Decedent's death. Plaintiff has plead that, "[a]s a direct and proximate result of the Defendants' actions . . . [the Decedent] was shot multiple times, including close contact to the face, and suffered prior to dying." (ECF No. 1 at 22, ¶ 98.)   Moreover, Plaintiff alleges that "[the Commission] and [Sheriff] Cole did **nothing** to attempt to correct [Deputy] King's dangerous behavior in any way," and that they "fostered, and thereby encouraged, a culture of use of excessive force and utter disregard for proper police procedures."   (*Id.* at 14, ¶ 69) (emphasis in original).   These factual allegations, taken as true, sufficiently establish the third element of Plaintiff's supervisory liability claim against Sheriff Cole.

Therefore, because Plaintiff has plead adequate factual allegations to establish a plausible supervisory liability claim against Sheriff Cole pursuant to § 1983, Defendants' Motion to Dismiss is **DENIED** as to Count III to the extent it is asserted against Sheriff Cole.

### E.  Punitive Damages Against the Roane County Commission

Defendants finally argue that Plaintiff's demand for punitive damages is inappropriate because "it is well established that punitive damages are not available against municipalities for § 1983 claims."   (ECF No. 14 at 19.)   In response, Plaintiff states that she "foregoes her claim for punitive damages against [the Commission]."   (ECF No. 15 at 7.)   Therefore, Defendants' Motion to Dismiss is **GRANTED** as to Plaintiff's claim for punitive damages against the Commission.

*IV.    CONCLUSION*

For the foregoing reasons, Defendants' Partial Motion to Dismiss, (ECF No. 13), is **GRANTED IN PART** and **DENIED IN PART**.   Plaintiff's claims under Count I against the Commission based on Deputy King's conduct during his response to the Decedent's residence, and Sheriff Cole's policy-making decisions, are hereby **DISMISSED**.   Plaintiff's claims under Count II against Deputy King and Sheriff Cole based on conduct occurring outside the scope of employment are hereby **DISMISSED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:       December 17, 2021

THOMAS E. JOHNSTON, CHIEF JUDGE